UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

BOBBY FABRE

CIVIL ACTION

VERSUS

NO. 11-800-JJB

ROYAL FREIGHT, LP AND MEGA
TRANSPORTATION SERVICES, LLC

### RULING ON PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY

This matter is before the Court on a motion to exclude expert testimony filed by Plaintiff Bobby Fabre ("Fabre"). (Doc. 70). Defendants Royal Freight, L.P. and Mega Transportation Services, L.L.C. (collectively referred to as "Defendants") filed an opposition. (Doc. 74). Fabre filed a supplemental memorandum in support (Doc. 85) and a unilateral stipulation (Doc. 86) indicating that he would not present evidence concerning carpal tunnel and/or double crush syndrome. Defendants filed an opposition to the stipulation. (Doc. 95). This Court entertained oral argument on July 23, 2013. The Court has jurisdiction pursuant to 28 U.S.C. § 1332. For the reasons herein, the Court DENIES Plaintiff's Motion in part and GRANTS Plaintiff's Motion in Part. (Doc. 70).

I.

Fabre filed this action for personal injuries sustained when Defendants' employee, Bennie Wilder[1], while acting in the scope of his employment, rear-ended Fabre on Interstate 10 on or about August 7, 2011. (Doc. 1). The facts are undisputed and Defendants have stipulated to liability in this matter. (Doc. 49). The only issues remaining for trial are damages and causation. After the accident, Fabre began medical treatment with an orthopedic surgeon, Dr. David Wyatt. In November of 2011, Dr. Wyatt diagnosed Fabre with L5-S1 and C6-7 disc bulges. (Doc. 70,

---

[1] Wilder is not a party to this action.

1

Ex. 7). On March 9, 2012, Fabre informed Defendants that Dr. Wyatt recommended disk decompression surgery for Fabre. (Doc. 74, Ex. A). In April 2012, Fabre agreed to an independent medical evaluation ("IME"), which was arranged by the Defendants to be performed by neurosurgeon Dr. Kelly Scrantz. (Doc. 70, Ex. A). Fabre agreed on the condition that Defendants would "stipulate not to subject Mr. Fabre to an orthopedic IME at a later date." (*Id.*). After Dr. Scrantz performed the IME, on May 21, 2012, Fabre had the recommended disk decompression surgery. (Doc. 74).

On December 5, 2012, Dr. Wyatt diagnosed Fabre with "double crush syndrome in the right upper extremity" and recommended carpal tunnel surgery. (Doc. 74, Ex. B). On December 12, 2012, Fabre informed Defendants that Dr. Wyatt recommended this surgery and indicated that Fabre would "be happy to cooperate if you desire any additional presurgery evaluation regarding his carpal tunnel surgery" on the condition that it would not interfere with the surgery. (Doc. 74, Ex. C). At some point, Defendants informed Fabre that they had arranged an IME with Dr. Meredith Warner, an orthopedic surgeon. On January 23, 2013, Fabre questioned why Defendants wished to conduct this orthopedic IME, reminding Defendants that Fabre agreed to see Dr. Scrantz on the condition that he would not be required to see an orthopedic surgeon at Defendants' request. (Doc. 70, Ex. C). However, Fabre asked what Dr. Warner intended to evaluate so that Fabre could advise whether or not he would attend. (*Id.*). On January 24, 2013, Defendants indicated that they had asked Dr. Warner to evaluate Fabre's double crush syndrome and the recommended carpal tunnel surgery. (Doc. 70, Ex. D). In response, Fabre indicated that he would undergo the evaluation on January 25, 2013, on the grounds that Dr. Warner's evaluation would be limited in scope to just the double crush syndrome and the recommended surgery. (Doc. 70, Ex. E).

After Dr. Warner performed her evaluation, Dr. Warner submitted a 21-page report, consisting of a records review, the history of the present illness, including past medical history, medications, family history, social history, and an analysis of the examination performed, with her assessment/opinion. (Doc. 70, Ex. F). Dr. Warner determined that Fabre has "multiple biopsychosocial factors," including the present litigation, long-term use of narcotics, social and financial stressors, a "relatively lower education level," depression, tobacco use, anxiety, and "hypogonadism presumably from medications and/or depression." (*Id.* at 18). Dr. Warner concluded that these factors "reduce[] the chance of success with treatment and worse the perception of pain." (*Id.*). Dr. Warner also noted that there "has been no valid attempt to return him to work despite the fact that this would be therapeutic for him . . . [and] his total deconditioning began immediately after the injury and has continued to this date." (*Id.*).

With respect to the double crush syndrome and the need for the surgery, Dr. Warner noted that his symptoms "are extremely variable in nature, geography and intensity" to be able to determine that these symptoms "all relate to one or two nerve roots suffering compromise in the spine." (*Id.* at 19). Dr. Warner further stated that carpal tunnel syndrome "rarely results from trauma . . . [but if it did result] it is usually due to a compartment syndrome or fracture fragment compressing the median nerve and immediate surgical intervention is warranted." (*Id.*). Because Fabre did not complain of these carpal tunnel symptoms for a significant period of time after the accident, in Dr. Warner's opinion, the accident was not likely to have caused the carpal tunnel. With respect to double crush syndrome, Dr. Warner explained that "the double crush syndrome is likely inappropriate for use regarding any sensory disturbances in carpal tunnel syndrome[.]" (*Id.* at 20).

3

Ultimately, Dr. Warner concluded that Fabre had "non-specific pain of a chronic nature with significant biopsychosocial issues[,]" and that because his previous treatments have been unsuccessful, this is "a strong predictor for his future potential outcomes from further intervention such as a carpal tunnel release surgery." (*Id.* at 20-21). Dr. Warner recommended a return to work program instead of medications and surgeries.

II.

Admissibility of expert testimony is governed by Federal Rule of Evidence 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Under Rule 702, the trial court functions as a gatekeeper and must determine whether "an expert's testimony both rests on a reliable foundation and is relevant[.]" *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993).

Fabre seeks to exclude the majority of Dr. Warner's report and testimony on the grounds that Dr. Warner is not qualified to testify as to Fabre's mental/psychological state or his familial, financial, or work conditions that Dr. Warner characterizes as "biopsychosocial issues." Fabre argues that because Dr. Warner is an orthopedic surgeon, she is not qualified to render an opinion outside the scope of her expertise, but the majority of her report focuses on issues unrelated to orthopedic surgery.

4

Additionally, Fabre argues that her report should be limited just to her evaluation of the double crush syndrome and the recommended double carpal tunnel syndrome release surgery for two reasons. First, Fabre asserts that the parties agreed that Dr. Warner would only evaluate these two issues. Second, Fabre objects to Dr. Warner's review and summary of previous medical opinions rendered by other physicians as needlessly cumulative and urges the Court to exclude them under Federal Rules of Evidence 403. Because Fabre has already been evaluated by numerous other doctors, Dr. Warner's evaluation is cumulative and unnecessary.

Finally, Fabre argues that any evidence concerning his psychological state or his financial, familial, and work situation is irrelevant and highly prejudicial, and should be excluded pursuant to Federal Rules of Evidence 401 and 403. Fabre asserts that other experts, including a rehabilitation counselor and a psychologist, have already assessed these issues, and Dr. Warner's report would confuse and unfairly prejudice the jury.

In opposition, Defendants argue that Dr. Warner's testimony is relevant and reliable for several reasons. First, Defendants contend that while the parties agreed that Dr. Warner's IME was to be limited to the double crush syndrome and carpal tunnel release surgery, physicians need to consider a patient's medical and social history in order to render a complete assessment. (Doc. 74). Defendants assert that Dr. Warner needed to establish a foundation prior to forming her opinions. Additionally, Defendants note that Fabre did not receive the present diagnosis until fifteen months after the accident, and it would be unreasonable to expect Dr. Warner to "ignore the fifteen months of medical treatment Fabre received from the time of the accident, and be expected to provide an opinion as to the causation of his new diagnosis." (Doc. 74, at 5). Defendants argue that Dr. Warner should be allowed to explain how her IME was performed and provide the jury with the path she took in forming her opinions.

5

Defendants further argue that Dr. Warner's testimony is not needlessly cumulative because while Fabre had other examinations, Dr. Warner's examination was the only one that "independently address[ed] Fabre's new diagnosis and surgical recommendation." (*Id.* at 6). Defendants contend that Dr. Warner's testimony will assist the jury in understanding the diagnosis and the need for the surgery, two issues that were not addressed by any other physician.

Finally, Defendants argue that Dr. Warner considered multiple factors in formulating her opinion and concluded that these "biopsychosocial issues" will affect "a patient's perception of pain and chances of successful treatment." (*Id.* at 7). Defendants assert that these factors helped form the bases of her opinion, and pursuant to Federal Rule of Evidence 703, an expert "may be an opinion on facts or data . . . that the expert has been made aware of or personally observed." Fed. R. Evid. 703. "If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted." *Id. See also Bauman v. Centex Corp.*, 611 F.2d 115, 1120 (5th Cir. 1980) (finding that "the pertinent inquiry under Rule 703 is whether the facts are of a type reasonably relied on by experts in the particular field.").

III.

The Court finds that Dr. Warner's report and testimony is permissible only to the extent that she testifies specifically about the matters for which she was retained to examine – the double crush syndrome and carpal tunnel. With respect to her opinions about the biopsychosocial factors, the Court finds that this is unduly prejudicial and not relevant. Thus, the parties are precluded from introducing her opinions as to anything that is not related to double crush syndrome and carpal tunnel and the parties will be required to produce a redacted report.

6

With respect to the Plaintiff's unilateral stipulation that he will not present evidence concerning double crush and/or carpal tunnel injury, the Court finds that this is not necessary in light of this ruling. The jury should be permitted to hear the competing opinions concerning double crush and/or carpal tunnel injury, and thus, Dr. Warner's testimony is permitted only as to these diagnoses.

Accordingly, Plaintiff's Motion in Limine is DENIED in part and GRANTED in part. (Doc. 70).

Signed in Baton Rouge, Louisiana on July 23rd, 2013.

**JAMES J. BRADY, DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**